526

Hillsborough
No. 83-035

## New Hampshire Municipal Workers' Compensation Fund

v.

## John E. Smith

February 23, 1984

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Andrew D. Dunn* on the brief), by brief for the plaintiff.

*Wiggin & Nourie*, of Manchester (*Eric P. Bernard* on the brief), by brief for the defendant.

KING, C.J.   This workers' compensation case arises on an interlocutory transfer without ruling from the Superior Court (*Flynn, J.*). At issue is whether the benefits to be awarded a "part-time, special" police officer, who has been injured on the job, should be based on an average weekly wage computed under RSA 281:2, VII(1) or under RSA 281:2, VII(2) (Supp. 1983). We hold that RSA 281:2, VII(2) (Supp. 1983) does not apply to "part-time, special" officers.

Therefore, the amount of benefits to be awarded such officers must be determined based on an average weekly wage computed under the general provisions of RSA 281:2, VII(1).

On June 24, 1981, John E. Smith was injured when he was struck by a motor vehicle while performing his duties as a "part time, special" police officer for the Town of Hampton. Following the accident, Smith applied for and received workers' compensation benefits from the New Hampshire Municipal Workers' Compensation Fund, a corporation which provides workers' compensation coverage for the Town of Hampton. As a result of his injuries, Smith received temporary total disability benefits for a period of time while he was totally disabled, and is presently receiving permanent partial disability benefits.

The New Hampshire Municipal Workers' Compensation Fund initially based Officer Smith's disability benefits on an average weekly wage reflecting his actual hours, computed pursuant to RSA 281:2, VII(1). Under this provision, the average weekly wage of an employee is determined "by taking the gross earnings of the injured employee in the service of the same employer during the preceding 12 weeks, or a longer period, not to exceed one year, if more favorable to the injured, divided by the number of weeks." RSA 281:2, VII(1).

Smith argued, however that he was entitled to maximum compensation benefits, irrespective of the actual hours he had worked, pursuant to RSA 281:2, VII(2), under which "the average weekly wage for *volunteer or auxiliary* members of a fire or police department or ambulance service of the state or any of its political subdivisions . . . if injured while on duty, shall be deemed to be the *average weekly wages that entitles them to the maximum benefits* under this chapter." (Emphasis added.) The New Hampshire Municipal Workers' Compensation Fund refused to acknowledge Smith's alleged right to maximum benefits under this provision, however, maintaining that he was neither a "volunteer" nor an "auxiliary" member of a police department.

On October 8, 1981, at the request of Smith, a hearing was held before a hearings officer of the New Hampshire Department of Labor to adjudicate the rate of his temporary total disability benefits. The sole issue addressed was whether Smith, as a "part-time, special" police officer, was entitled to a computation of his average weekly wage under RSA 281:2, VII(2). On November 17, 1981, the department of labor ruled that a "part-time, special" police officer was in fact entitled to a computation of his average weekly wage under RSA 281:2, VII(2). The department concluded that "[t]he use

of the phrase 'auxiliary either paid or unpaid,' was a clear attempt [*by the legislature*] to have all part-time officers receive maximum benefits."

The New Hampshire Municipal Workers' Compensation Fund appealed this decision of the labor department to the superior court, which transferred the following controlling question of law to this court for resolution:

"Whether John E. Smith, having been appointed a special police officer and having been injured in the course of his employment as a part-time police officer for the Town of Hampton, is entitled to a computation of his average weekly wage that would entitle him to maximum benefits under the statute pursuant to RSA 281:2(VII)(2) or rather whether his average weekly wage should be computed from his gross earnings in the service of the Town of Hampton, pursuant to RSA 281:2(VII)(1)."

We recognize the fact that RSA 281:2, VII(2) has recently been amended. Laws 1983, 392:5. We find, however, that this amendment has not substantively changed any of the provisions relevant in this case; therefore, we will refer to the current version of the statute, which is codified at RSA 281:2, VII(2) (Supp. 1983).

In RSA 281:2, VII(1), the legislature sets forth the method for computing the average weekly wage of an employee who has been injured on the job and is seeking workers' compensation benefits. A few specified categories of employees, however, have been expressly exempted by the legislature from this general provision. The average weekly wage of these employees, pursuant to RSA 281:2, VII(2) and (3), is "deemed to be the average weekly wage that entitles them to the maximum benefits" provided under the workers' compensation statute. "Volunteer" and "auxiliary" members of a police department are two categories of employees whose average weekly wage is deemed to be that which entitles them to maximum benefits. RSA 281:2, VII(2)(A) (Supp. 1983).

In the instant case, the claimant is seeking to recover additional workers' compensation benefits. He argues that the labor department properly construed the term "auxiliary" in RSA 281:2, VII(2)(A) (Supp. 1983) to include "part-time, special" police officers and that his average weekly wage, which controls the amount of his benefits, should therefore be computed pursuant to that section. In order to decide whether the claimant in this case is entitled to the increased benefits he seeks, we must determine whether a "part-time, special" police officer is in fact an "auxiliary" member of a police department within the meaning of RSA 281:2, VII(2)(A)

(Supp. 1983). Our first step, therefore, must be to determine the meaning and scope of the term "auxiliary" police officer.

Although various police departments currently use the term "auxiliary" to connote specific classifications of officers within their departments, in construing the statute the question becomes what the term meant to the legislature. *State v. Downes*, 79 N.H. 505, 506, 112 A. 246, 247 (1920). In enacting RSA 281:2, VII(2) (Supp. 1983), the legislature did not define the term "auxiliary" police officer; therefore, we must rely on other means to determine legislative intent.

The sole statutory definition of auxiliary police is found within RSA 106-B:19, which authorizes the director of the State police "to recruit, train and organize an auxiliary state police force for the purpose of providing emergency services throughout the state for peacetime or wartime emergencies or threatened emergencies and for augmenting the state police force in such manner as the director may deem appropriate." The statute further mandates that "[s]uch auxiliary force shall . . . serve for a period of not more than 90 days in any one year."

■ This description of an auxiliary police force, as a force designed to assist the State police temporarily in the event of an emergency, is consistent with the ordinary meaning attributed to the word "auxiliary." As defined by *The American Heritage Dictionary of the English Language* (1981), the adjective "auxiliary" means "giving assistance or support"; "subsidiary; supplementary"; "held in or used as a reserve." An auxiliary State police officer, as defined by RSA 106-B:19, would not be a regularly employed member of the State police force, but rather an officer called to duty to assist the State police when needed. We find, based on the ordinary meaning of the word "auxiliary" and on the statutory definition of an auxiliary State police force, that the legislature, in awarding extraordinary benefits to "auxiliary" police officers, did not intend to award such benefits to regularly employed members of a police department, but rather to those individuals who temporarily assist the police in an emergency situation and whose service to the community at large is itself, therefore, extraordinary.

■ This intent is further evident from the additional classes of workers specifically covered by RSA 281:2, VII(2) (Supp. 1983). The statute benefits members of the State militia, volunteer or auxiliary members of a fire or police department or ambulance service, and, by its most recent amendment, volunteer rescue personnel. RSA 281:2, VII(2) (Supp. 1983). In all of these classifications—fire, ambulance, militia, and rescue—there is the same connotation of emer-

gency and the idea of calling on volunteers and citizens to help out in a time of need. *See* RSA 110-B:4; :6 (Supp. 1983) (power given to Governor "in case of invasion, disaster, insurrection, riot, breach of peace, . . ." to call State *militia* into active service); RSA 154:8 (Supp. 1983); :9-a (authority of fire departments recognized to compel assistance by conscription in event of emergency).

■■ The claimant in the instant case, who is seeking to recover the extraordinary benefits accorded to an "auxiliary" police officer, was appointed a "special" police officer for the Town of Hampton on June 16, 1980, to serve on a part-time basis. The term "special" police officer is used to connote those officers who, rather than having been elected pursuant to RSA 41:47, have been appointed to "continue in office during the pleasure of the selectmen, or until their successors are chosen or appointed." RSA 105:1; *see* RSA 37:6, II, VII. A special police officer may be appointed either for a temporary or specific purpose, or for permanent and full-time duty. *Dubia v. Tilton*, 96 N.H. 489, 491, 79 A.2d 346, 347–48 (1951); *see* RSA 41:48 (Supp. 1983). Although most police departments no longer refer to their full-time officers as such, the great majority of all police officers now serving in this State (both full-time and part-time) are in fact, technically and legally, specials—serving by appointment, rather than election.

The claimant in this case, however, does not argue that the term "auxiliary" encompasses all *"special"* police officers, thereby awarding extraordinary benefits solely on the basis of whether an officer has been appointed or elected. Rather, the claimant contends that the term "auxiliary" encompasses, as the labor department held, all *part-time* officers.

We recognize that law enforcement terminology has varied over the years and continues to vary by local jurisdiction. The result is a multitude of terms used to describe part-time police officers. We therefore must focus, in this case, exclusively upon the type of position held by the claimant in determining whether he is entitled to maximum benefits under RSA 281:2, VII(2)(A) (Supp. 1983).

By the notice of his appointment, the claimant was appointed a "special" police officer for the Town of Hampton on June 16, 1980, to serve until "another person shall be chosen and qualified in your stead." He was certified as qualified to be a part-time police officer by the New Hampshire Police Standards and Training Council. The claimant was employed by the town to work on a regularly scheduled basis throughout the summer of 1981.

■ Based upon our determination as to the limited definition accorded the term "auxiliary" police by the legislature in enacting

RSA 281:2, VII(2)(A) (Supp. 1983), we find that this term does not encompass the claimant's position of "part-time, special" police officer. On the day that he was injured, Officer Smith was not on duty to temporarily assist the Hampton Police Department on an emergency basis. Rather, he was a regularly employed member of the police force, performing during his scheduled shift. We do not believe that it was the intent of the legislature to award extraordinary benefits to a *regularly employed* member of a police department based solely on the fact that he worked a fewer number of hours per week than a full-time officer. Such a reading of RSA 281:2, VII(2)(A) (Supp. 1983) would allow part-time officers in most instances to receive greater compensation benefits than regular, full-time officers performing the same duties and injured similarly in the line of duty.

Recent legislative action provides some further indication that not all part-time officers are currently included within the beneficial provisions of RSA 281:2, VII(2)(A) (Supp. 1983).

House Bill 533-FN, introduced in the 1983 session, if enacted, would have provided that the average weekly wage of all *part-time members* of a police or fire department, whether appointed or elected, would be deemed to be the average weekly wage which entitles them to maximum benefits. The bill further noted that current law affords the same treatment to volunteer and auxiliary members of a police department. The house, however, accepted the recommendation of the Committee on Labor, Human Resources and Rehabilitation and voted the bill inexpedient to legislate. Representative Calvin Warburton, speaking for the committee, noted that "[i]f this measure were passed, part-time employees would earn more in compensation than full-time employees. Current law takes care of designated emergency part-time employees." N.H.H.R. JOUR. 538 (1983) (page proofs).

A similar piece of senate legislation, Senate Bill 75-FN, providing for maximum benefits for all part-time police officers, although passed by the senate, was also voted inexpedient to legislate by the house and was subsequently referred to interim study. The House Committee on Labor, Human Resources and Rehabilitation, upon reviewing this bill, similarly noted that "there are elements which treat persons in an uneven manner." N.H.H.R. JOUR. 694 (1983) (page proofs). Although the fact that these two bills were submitted to the legislature is not determinative of legislative intent in enacting RSA 281:2, VII(2)(A) (Supp. 1983), they do provide some further support for our conclusion that the statute, as it presently exists, does not include all "part-time" police officers within the scope of its entitlement.

In answer to the question posed by the superior court in this case, we conclude that the amount of benefits to be awarded Officer Smith must be determined based on an average weekly wage computed under the general provisions of RSA 281:2, VII(1). Based upon our determination that the claimant, a "part-time, special" police officer, is not entitled to a computation of his average weekly wage that would entitle him to maximum benefits, as accorded an "auxiliary" police officer under RSA 281:2, VII(2)(A) (Supp. 1983), we need not address the equal protection arguments raised in this case by the New Hampshire Municipal Workers' Compensation Fund.

*Remanded.*

All concurred.